UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KENNETH W.,

                            Plaintiff,

v.                                                   1:19-CV-0825
                                                       (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC      JEANNE MURRAY, ESQ.
  Counsel for Plaintiff                                     KENNETH HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                    MONIKA CRAWFORD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 16.)[1] The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

---

[1] In accordance with Standing Order dated November 18, 2020, to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

I.     **RELEVANT BACKGROUND**

   A.     **Factual Background**

Plaintiff was born in 1971. (T. 91.) He completed the 10th grade. (T. 94.) Generally, Plaintiff's alleged disability consists of: mood disorder, bipolar disorder, depression, migraines, post-traumatic stress disorder ("PTSD"), anxiety, high cholesterol, and high blood pressure. (T. 89-90.) His alleged disability onset date is November 6, 2012. (T. 87.) His date last insured is March 31, 2013. (*Id*.) His past relevant work consists of fast food cook and produce clerk. (T. 33, 107.)

   B.     **Procedural History**

On August 21, 2015, Plaintiff applied for Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 178.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On January 17, 2018, Plaintiff appeared before the ALJ, Lynette Gohr. (T. 732-770.) On March 21, 2018, ALJ Gohr issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 18-39.) On April 24, 2019, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-9.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.     **The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 24-35.) First, the ALJ found Plaintiff met the insured status

requirements through March 31, 2013 and Plaintiff had not engaged in substantial gainful activity since November 6, 2012.  (T. 24.)  Second, the ALJ found Plaintiff had the severe impairments of: migraine headaches, bipolar disorder, post-traumatic stress disorder ("PTSD") and obsessive-compulsive disorder ("OCD").  (*Id*.)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 25.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with additional non-exertional limitations. (T. 27.)  The ALJ found Plaintiff:

> can tolerate no more than moderate levels of noise as defined in the DOT and its related publications.  [Plaintiff] could never tolerate exposure to unprotected heights and moving machinery or moving mechanical parts.  [Plaintiff] must avoid working with bright lights or flickering lights, such as would be experienced in welding or cutting metals.  [Plaintiff] can work in a low stress work environment, defined as including simple instructions and tasks with no supervisory duties and no independent decisions-making or strict production quotas and minimal changes in work routine and processes.  [Plaintiff] can have occasional interaction with supervisors, coworker and the public.

(*Id*.)  Fifth, the ALJ determined Plaintiff capable of performing his past relevant work as a produce clerk/laborer.  (T. 32.)  In the alternative, the ALJ determined there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 33-34.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ improperly gave great and significant weight to the non-examining and consultative opinions of record, opinions which did not

constitute substantial evidence due to Plaintiff's mental impairments, and the RFC, therefore, is not supported by substantial evidence. (Dkt. No. 12 at 13-18.)  Second, and lastly, Plaintiff argues the ALJ failed to properly assess Plaintiff's "credibility" because she overstated and mischaracterized Plaintiff's daily activities, she failed to consider good reasons for Plaintiff's non-compliance with treatment, and she failed to properly consider Plaintiff's migraines. (*Id*. at 18-28.)  Plaintiff also filed a reply in which he reiterated his original arguments. (Dkt. No. 15.)

### B.     Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the ALJ properly weighed the medical opinion evidence and substantial evidence supported the ALJ's RFC finding. (Dkt. No. 14 at 6-11.)  Second, and lastly, Defendant argues the ALJ properly evaluated Plaintiff's subjective statements. (*Id*. at 11-14.)

## III.    RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.   **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R.

§§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Consultative Examiner Opinion Evidence

Plaintiff argues the ALJ improperly weighed the opinion evidence provided by the consultative examiners.  (Dkt. No. 12 at 13.)  Specifically, Plaintiff argues the opinions of examining and non-examining consultative examiners cannot constitute substantial evidence "due to the nature of Plaintiff's mental impairments."  (*Id.*)  Lastly, Plaintiff argues the ALJ failed to develop the record for additional medical opinion evidence.  (*Id.*)  For the reasons outlined below, Plaintiff's arguments fail.

To be sure, ALJs should not rely heavily on one-time consultative examiners, especially in the context of mental illness, as a single look at an individual's condition is not indicative of his overall mental health.  *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019).  However, the regulations "recognize that the Commissioner's consultants are highly trained physicians with expertise in evaluation of medical issues in disability claims whose opinions may constitute substantial evidence in support of residual

functional capacity findings." *Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin,* 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015)); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x. 123, 126 (2d Cir. 2016); *Monette v. Colvin,* 654 F. App'x 516, 518 (2d Cir. 2016) (ALJ properly afforded great weight to consultative examiner's opinion); s*ee also Snyder v. Colvin*, 667 F. App'x 319, 320 (2d Cir. 2016) ("The opinion of a treating physician is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence.").

As noted by the ALJ, the record does not contain an opinion from a treating source; therefore, the opinions of the consultative examiners are the only medical opinions in the record.  (T. 35.)  Here, the ALJ properly weighed the medical opinion evidence in the record provided by consultative examiner Gregory Fabiano, Ph.D. and non-examining State agency medical examiner Dr. Kleinerman.

Dr. Fabiano conducted a thorough psychiatric evaluation of Plaintiff on January 8, 2016, including taking a thorough psychiatric history and account of Plaintiff's current functioning, and conducting a mental status examination.  (T. 361-365.)  Based on the results of the evaluation, Dr. Fabiano opined Plaintiff had no limitations in his ability to: follow and understand simple directions and instructions; perform simple tasks independently; maintain a regular schedule; learn new tasks; or perform complex tasks independently.  (T. 364.)  Dr. Fabiano opined Plaintiff had mild limitations in his ability to make appropriate decisions.  (*Id*.)  He opined Plaintiff had moderate limitations in his ability to: maintain attention and concentration; relate adequately with others; and appropriately deal with stress.  (*Id*.)  Dr. Fabiano stated the results of the examination

7

appeared to be consistent with psychiatric and substance abuse problems; however, this in itself, did not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis.  (*Id.*)

The ALJ afforded Dr. Fabiano's opinion "significant weight."  (T. 31.)  The ALJ noted the doctor only examined Plaintiff on one occasion; however, he specialized in the area of psychology and had expertise in the disability program.  (*Id.*)  The ALJ concluded Dr. Fabiano's opinion was consistent with Plaintiff's ongoing treatment including medication management, as well as Plaintiff's ability to engage in a range of daily activities without significant limitations.  (*Id.*); *see* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (the more consistent a medical opinion is with the record as a whole, the more weight it will be given)[2].  The ALJ also concluded Dr. Fabiano's opinion accounted for Plaintiff's social limitations.  (T. 32.)  Therefore, the ALJ properly gave significant weight to Dr. Fabiano's opinion, and the opinion supported the ALJ's mental RFC finding.  *See Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (a consultative physician's opinion may constitute substantial evidence in support of the ALJ's determination).

The ALJ also properly afforded Dr. Kleinerman's opinion "great weight."  (T. 31.)  Dr. Kleinerman reviewed the medical evidence of record available as of January 13, 2016.  (T. 103-104.)  The doctor opined Plaintiff's ability to deal with coworkers, supervisors and the public would be reduced, but he could handle brief and superficial

---

[2]  Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

contact with coworkers and the public and ordinary levels of supervision customary in a work setting. (T. 103-104.) Dr. Kleinerman opined Plaintiff had moderate limitations in: setting realistic goals or making plans independently of others; perform activities within a schedule; maintaining regular attendance and being punctual within customary tolerances; and maintaining attention and concentration for extended periods. (T. 105.) Dr. Kleinerman opined Plaintiff's work-related mental functioning was otherwise not significantly limited. (T. 105-106.)

In weighing Dr. Kleinerman's opinion, the ALJ recognized the doctor did not examined Plaintiff; however, he was an acceptable medical source with knowledge of the disability programs. (T. 31); s*ee* 20 C.F.R. §§ 404.1527(c)(1),(5),(6), 416.927(c)(1),(5),(6). Moreover, the ALJ concluded Dr. Kleinerman's opinion was consistent with the medical evidence of record, including treatment notes, which reflected generally normal mental status findings, and the findings of the consultative examiner. (T. 31); *see* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The ALJ concluded Dr. Kleinerman had not had the chance to review all the evidence of record, however, the ALJ determined evidence submitted subsequent to Dr. Kleinerman's opinion did not show greater restrictions than those assessed by the doctor. (T. 31.)

Contrary to Plaintiff's assertion, the record was not deficient and the ALJ was not required to develop the record further. (Dkt. No. 12 at 17.) The ALJ is not required to develop the record any further when the evidence already presented is "adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill*, 710 F. App'x 33 (2d Cir. 2018) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). The record

contained medical opinion evidence, treatment notations, and Plaintiff's testimony. Further, Plaintiff was represented by counsel at all stages of the application process.

Overall, the ALJ properly considered the record as a whole in assessing the medical opinions and formulating her ultimate RFC determination. *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018). The opinions of the consultative examiners, containing no more than moderate limitations, together with other evidence in the record, supported the ALJ's mental RFC determination which limited to Plaintiff to simple, low stress work with only occasional social interactions. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("None of the clinicians who examined her indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations.").

As noted by the ALJ, although no treating source provided a medical source statement, the record did contain mental health treatment notations with objective mental status observations. (T. 30-32.) Therefore, the ALJ's mental RFC determination was supported by the opinions of the consultative examiners and the overall record as a whole. Further, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ and Plaintiff fails to do so. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).

    **B.**    **Plaintiff's Subjective Complaints**

Plaintiff argues the ALJ failed to properly assess Plaintiff's "credibility," because she mischaracterized Plaintiff's activities of daily living, failed to account for Plaintiff's

"good reasons" for non-compliance, and failed to properly consider Plaintiff's migraines. (Dkt. No. 12 at 18-28.)[3]

The ALJ must employ a two-step analysis to evaluate a plaintiff's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id*. §§ 404.1529(a), 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit plaintiff's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) plaintiff's daily activities; (2) the location, duration, frequency, and intensity of plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication plaintiff takes or has taken to relieve his pain or other symptoms; (5) other treatment plaintiff receives or has received to relieve his pain or other symptoms; (6) any measures plaintiff takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

---

[3] On March 28, 2016, SSR 16-3p superseded SSR 96-7p and eliminated the use of the term "credibility" as the regulations do not use the term. SSR 16-3P (S.S.A. Mar. 16, 2016) ("we are eliminating the use of the term 'credibility' from our sub-regulatory poly, as our regulations do not use this term").

The ALJ, who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is the "best-positioned to make accurate credibility determinations." *Whiting v. Astrue*, No. 1:12-274, 2013 WL 427171, at *6 (N.D.N.Y. Jan. 15, 2013), *report and recommendation adopted*, 2013 WL 427166 (N.D.N.Y. Feb. 4, 2013).  As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Perez v. Barnhart*, 440 F.Supp.2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).

Here, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (T. 28-29.)

First, contrary to Plaintiff's assertion, the ALJ did not equate Plaintiff's activities of daily living with the ability to perform substantial gainful activity.  (Dkt. No. 12 at 20-21.) The ALJ properly considered Plaintiff's daily activities, as one factor, in making her determination that Plaintiff's statements concerning the limiting effects of his symptoms were not as severe as alleged.  *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.2929(c)(3)(i) (the Commissioner will consider plaintiff's daily activities when evaluating subjective symptoms); *see also Lamorey v. Barnhart*, 158 F. App'x 361, 363 (2d Cir. 2006) ("substantial evidence of routine activities" properly found to be inconsistent with claims of total disability); *Cheatham v. Comm'r of Soc. Sec.*, 1:17-CV-0782, 2018 WL 5809937, at *10 (W.D.N.Y. 2018) (ALJ's determination that plaintiff could maintain attention and concentration for simple, routine, repetitive tasks and interact to some degree with

others is supported by plaintiff's activities, which included using public transportation, preparing meals, cleaning, shopping and playing basketball).  The ALJ noted Plaintiff he is able to tend to his personal hygiene, prepare simple meals, engage in household chores, visit with friends, shop, fish, handle finances, watch television, care for his pet, maintain treatment appointments, and take public transportation.  (T. 29, 30.)  A review of the record and the ALJ's determination indicate the ALJ properly assessed Plaintiff's activities in the context of his reported symptomology.

Indeed, Plaintiff reported multiple times that he intended to seek out work if his claim for benefits was denied.  (T. 467 ("I am going fishing, going to meetings and watching movies, but I would like to hear about my SSI so that I can get a PT job."), T. 581 ("[Plaintiff] indicated that he is currently pending for SSI/SSD for his mental health issues and migraines.  He indicated that he is not sure at this point if he wants to return to work.  Stated that if he does not get SSI/SSD he indicated he will return to working in produce as a back up.")).  Therefore, the ALJ properly considered Plaintiff's daily activities, and further noted there was evidence raising the question of whether Plaintiff's continuing unemployment was actually due to his medical impairments.  (T. 29.)

Overall, there is no suggestion in the ALJ's decision she relied on Plaintiff's daily activities as dispositive evidence he was not disabled.  Rather, the ALJ properly considered Plaintiff's daily activities along with the other substantial evidence of record, including medical opinions and treatment records, to find Plaintiff was not as limited as he alleged.  (T. 29.)

Second, the ALJ properly considered Plaintiff's non-compliance with treatment as one factor in her overall assessment of Plaintiff's subjective complaints. (T. 29.) The ALJ noted evidence in the record indicating Plaintiff was not compliant with his treatment including medications. (*Id.*) Indeed, notation indicated Plaintiff was non-complaint with therapeutic regimen and appointments. (T. 312, 313, 368, 372, 414.) The ALJ considered evidence indicating Plaintiff's symptoms were "manageable" when compliant with medication. (T. 29, 358.) The ALJ considered Plaintiff's non-compliance was associated with increased symptoms, including his suicide attempt in May 2016. (T. 29, 381.) Further, while Plaintiff contends he was non-compliant as a result of his mental health problems, the record shows he also missed appointments due to "being in Holland," a friend "having problems," and plumbing problems. (*See* T. 337-341.)

Therefore, the ALJ properly considered Plaintiff's non-compliance with treatment as one of the many factors relevant to the evaluation of his subjective allegations. *See* SSR 16-3p, 2017 WL 5180304, at *9 (if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, the ALJ may find that the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence in the record); *see also Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) (ALJ appropriately considered claimant's daily activities, non-compliance with medication, and poor attendance in treatment programs when finding her subjective allegations less than fully credible).

Third, the ALJ properly assessed Plaintiff's subjective complaints concerning his migraines. (T. 30.) Contrary to Plaintiff's assertion, the ALJ did not question Plaintiff's diagnosis of migraines based on lack of objective evidence, indeed, the ALJ found Plaintiff had the severe impairment of migraines. (T. 24.) Here, the ALJ properly determined Plaintiff's subjective statements concerning the intensity and frequency of his migraines was not supported by evidence in the record. (*Id*.) Despite this determination, the ALJ ultimately viewed "the evidence in light most favorable to [Plaintiff]," and limited him to moderate noise levels with no exposure to unprotected heights, moving machinery or mechanical parts, and avoidance of working with bright or flickering lights. (*Id*.)

Here, the ALJ properly assessed Plaintiff's subjective complaints concerning the limiting effects of his impairments. The ALJ applied the two-step inquiry and set forth her reasons for finding Plaintiff's statements not fully consistent with the evidence in the record. Substantial evidence in the record, as outline above, supported the ALJ's determination. "Given the sharply limited scope of our review, we see no basis for disturbing the ALJ's credibility determination." *Wright v. Berryhill*, 687 F. App'x 45 (2d Cir. 2017).

Overall, the ALJ has the duty to evaluate conflicts in the evidence. *See* 20 C.F.R. §§ 404.1567(c)(i), 416.927(c)(i); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)). Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a

reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence). As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision. *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). "[O]nce an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder *would have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:        December 16, 2020

*[signature: Bill Carter]*
William B. Mitchell Carter
U.S. Magistrate Judge